**In the Matter of the Care and Treatment of Michael FOGLE, Respondent,**

v.

**Chris KOSTER, Attorney General, State of Missouri, and Keith Schafer, Director, Missouri Department of Mental Health, Appellants.**

**No. WD 73815.**

Missouri Court of Appeals, Western District.

Aug. 28, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2012.

Application for Transfer Denied Nov. 20, 2012.

See also 295 S.W.3d 504.

James Layton, Jefferson City, MO, for Appellants.

Erika Eliason, Columbia, MO, for Respondent.

Before JAMES EDWARD WELSH, C.J., THOMAS H. NEWTON, J., and OWENS L. HULL, Sp. J.

JAMES EDWARD WELSH, Chief Judge.

The State appeals the circuit court's judgment placing special conditions on the Department of Mental Health for the commitment of Michael Fogle as a sexually violent predator. The State first asserts that the court erred in recognizing an agreement between the State and Fogle. The State contends that it did not enter an agreement with special conditions in exchange for a stipulation of facts by Fo-

gle. Second, the State asserts that the circuit court lacked constitutional authority to place the special conditions on Fogle's commitment. It contends that the Department of Mental Health has the constitutional authority to determine the care, control, and treatment of Fogle, not the circuit court. Third, the State asserts that the circuit court lacked statutory authority to place the special conditions on Fogle's commitment. It contends that the Department of Mental Health has the statutory authority to determine the care, control, and treatment of Fogle, not the circuit court. Finally, the State asserts that, even if the circuit court did have the authority to place the special conditions on Fogle's commitment, the conditions were not supported by substantial evidence and are against the weight of the evidence. As set forth below, because we find that there was no agreement between the State and Fogle for special conditions on Fogle's care and treatment in exchange for a stipulation of facts and find that the circuit court lacked statutory authority to place conditions on Fogle's care and treatment, we do not address points two and four on appeal. We reverse and remand the circuit court's judgment.

## Statement of Facts

The State filed a petition pursuant to the Sexually Violent Predator Act ("SVP Act") to commit Fogle to a secure facility for care, control, and treatment. After a probable cause hearing, the circuit court determined that there was probable cause to proceed.

Fogle moved to dismiss the petition on the basis that the State failed to follow procedures required by section 632.483, RSMo Cum.Supp.2011, to file a commitment petition. The State's petition relied upon and incorporated Dr. David Suire's report that Fogle has a mental abnormality and is more likely than not to commit a sexually violent offense in the future. In his motion to dismiss, Fogle noted that Dr. Suire did not hold a Missouri-issued license to practice psychology at the time he prepared Fogle's end-of-confinement report. Fogle claimed that section 632.483 requires the commitment process to be initiated by a finding from a Missouri-licensed psychologist. The court denied the motion to dismiss.

In lieu of a regular trial on the petition, Fogle stipulated to the facts that the State would otherwise be required to prove: that he had pleaded guilty to at least one "sexually violent offense," as that phrase is defined in section 632.480(4), RSMo Cum. Supp.2011; that he suffers from a "mental abnormality" within the meaning of section 632.480(2); and that, as a result of his mental abnormality, he is more likely than not to commit predatory acts of sexual violence if not confined in a secure facility. § 632.480(5). Fogle, his counsel, and the State's counsel signed the stipulation. In the stipulation, the parties specifically agreed that Fogle could reserve the right to appeal the contention related to the fact that Dr. Suire was not a Missouri-licensed psychologist as required by statute.

With Fogle's consent, the circuit court held a brief commitment hearing by phone. Prior to the hearing, Fogle submitted a lengthy packet to the court, which he prepared himself, proposing certain conditions of confinement upon his commitment. The court then heard argument from counsel concerning treatment and management. Fogle's counsel complained about treatment options at the Department of Mental Health (the "Department") facility where Fogle would be held and requested special conditions. The State objected to Fogle's request for special conditions and noted that Fogle failed to present evidence regarding treatment available at the facility.

On the second day of the hearing, the court stated that it was inclined to order special conditions but that they "would be subject to challenge in the future." Fogle stated that he understood. Fogle then confirmed under oath that he desired to stipulate that he qualified as a sexually violent predator and to stipulate to his commitment.

The court ordered that the Director of the Department include in the care and treatment of Fogle many special conditions, such as the specific building, room number, and risk rating that Fogle should be assigned, as well as numerous art supplies not allowed to other committed persons. Thereafter, the State appealed the special conditions set forth in the judgment and Fogle appealed the circuit court's denial of his motion to dismiss. The two appeals were consolidated.[1] On July 7, 2009, this Court remanded the matter back to the circuit court to join the Director of the Department as a party to the action. Additionally, this Court affirmed the denial of Fogle's motion to dismiss. However, this Court did not consider the merits of the State's claims regarding the special conditions.[2]

On remand, the Department called two witnesses to support their argument that the special conditions ordered by the court would put a financial and practical burden on the Department's ability to effectively manage the Sex Offender Rehabilitation & Treatment Services ("SORTS") program.[3] They also testified to the disciplinary and treatment programs of SORTS. Fogle testified on his own behalf that his art supplies were important to him because he wanted to be able to sustain himself if he was ever released from the facility. Fogle also called an expert witness that testified that he did not believe the art supplies would interfere with Fogle's treatment. The witness also testified that even though art may be therapeutic to Fogle, providing art supplies to Fogle may cause other committed persons in the facility to want certain privileges too.

The court found that in April of 2008 the State had entered into an agreement with Fogle that Fogle would receive special conditions in exchange for stipulating to facts that he met the statutory criteria for a sexually violent predator. The court found that the agreement was a valid and enforceable obligation of the State, and, consequently, the Department must comply with the special conditions contained therein. Furthermore, the court found that the Department failed to offer convincing evidence that the Agreement entered into by the State and Fogle constituted a financial or practical burden on its ability to effectively manage the SORTS program. The State appeals, claiming the court erred in finding that the State agreed to special conditions in exchange for Fogle's stipulation. Additionally, the State claims that the court erred in ordering the special conditions, contending that the court lacked constitutional and statutory authority to order such conditions, that the order was not supported by substantial evidence, and that the court's order was against the weight of the evidence.

## I. The "Agreement"

In a court-tried case, a reviewing court will sustain the trial court's judg-

---

1. All of the above set of facts were taken from Judge James M. Smart's opinion in *Fogle v. State*, 295 S.W.3d 504 (Mo.App.2009).

2. *Fogle v. State*, 295 S.W.3d 504, 512 (Mo. App.2009).

3. SORTS is the treatment program designated by the Department for persons committed to the Missouri Sex Offender Treatment Center under the SVP Act.

ment unless the judgment is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In lieu of a regular trial on the State's petition filed pursuant to the SVP Act, Fogle stipulated to the facts that the State would otherwise be required to prove. Before the commitment hearing, Fogle sent a lengthy packet to the circuit court proposing certain conditions of confinement upon his commitment. These certain conditions were not mentioned in the signed stipulation of facts made previously with the State. The court heard arguments from both sides regarding the treatment and care at the facility in which Fogle would be committed. The State objected to the special conditions. After argument, the court advised Fogle of its inclination to order the special conditions with the understanding that they could be subject to future challenge. Fogle then confirmed, under oath, his qualification as a sexually violent predator and stipulated to his commitment.

On remand, at the conclusion of an evidentiary hearing, the State once again objected to the special conditions as beyond the court's "jurisdiction."[4] In response to the objection, Fogle said nothing about an agreement between the State and Fogle.

The court's subsequent order indicates that the State agreed that, while committed, Fogle would be entitled to the therapeutic activities and amenities listed in the order. The record, however, does not reflect that the State made any such agreement. In fact, the record clearly shows that the State objected to "any special conditions or accommodations made to Mr. Fogle" in both the 2008 and 2010 proceedings. It was Fogle who asked the court

that certain conditions be granted in exchange for his stipulation to commitment. In the 2008 proceeding, the transcript reads in part:

[Fogle's Attorney]: Mr. Fogle, what we have presented to the court and what the court has considered up to this is the idea of you stipulating to your commitment with the Department of Mental Health, and what you had asked the court to consider is some certain specific conditions be ordered after that stipulation; is that right?

Mr. Fogle: Yes.

. . . .

The Court: ... [Your attorney] has just indicated that the court had agreed to enter an order if you made your stipulation, that contained some requests that you had made through your attorney, and in fact, we had a hearing that you were not present at concerning the court's ability to make an order of the type that you had requested and the State opposed the court's entering certain directives to the Department of Mental Health.

As [your attorney] indicated, the court had decided at the conclusion of that hearing that it would proceed to act upon your request and direct the Department of Mental Health to do certain things that the court believes would aid in your treatment and are appropriate for your care, but I want you to understand one thing, and that is that the Missouri Department of Mental Health may challenge this order in the future.

Therefore, because the record does not support the court's finding that Fogle's stipulation agreement with the State included the State's agreement to Fogle re-

---

**4.** As discussed later, the court did have both subject matter jurisdiction and personal juris-

diction. Therefore, it is a question of authority not jurisdiction.

ceiving special conditions upon commitment, such finding is unsupported by the record.[5] The court, therefore, erred in finding that, because the State had entered into such agreement, the State was, therefore, compelled to abide by it.[6]

## II. The Department's and Circuit Court's Statutory Authority

 Missouri courts recognize two types of jurisdiction: subject matter jurisdiction and personal jurisdiction. *J.C.W. v. Wyciskalla,* 275 S.W.3d 249, 252 (Mo. banc 2009). Subject matter jurisdiction is "the court's authority to render a judgment in a particular category of case." *Id.* at 253. Under the Missouri Constitution, "the circuit courts shall have original jurisdiction over all cases and matters, civil and criminal. Such courts may issue and determine original remedial writs and shall sit at times and places within the circuit as determined by the circuit court." MO. CONST. art. V, § 14. Thus, the circuit court has subject matter jurisdiction to determine whether or not a person is a sexually violent predator. Personal jurisdiction is the "power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests." *J.C.W.,* 275 S.W.3d at 253 (citing *State v. Fassero,* 256 S.W.3d 109, 117 (Mo. banc 2009)). In a sexually violent predator case, the court has personal jurisdiction over the alleged sexually violent predator because the proceeding affects a person's rights and interests as to whether the person should be civilly committed by the State. When the court has both subject matter and personal jurisdiction, the issue is whether or not the court has au-

thority to render a particular judgment in a particular case. *J.C.W.,* 275 S.W.3d at 254 (citing *In re Marriage of Hendrix,* 183 S.W.3d 582, 588 (Mo. banc 2006)). In this case, the question is whether or not the court lacked constitutional or statutory authority in ordering special conditions. Because we find that the court lacked statutory authority, we need not address whether the court lacked constitutional authority. Whether a court lacked statutory authority is a question of law reviewed *de novo. Ground Freight Expeditors, LLC v. Binder,* 359 S.W.3d 123, 126 (Mo.App. 2011).

 An action brought under the SVP Act is a special statutory proceeding. *In re Salcedo,* 34 S.W.3d 862, 867 (Mo.App. 2001). In special statutory proceedings, a court is limited to the powers granted to it by statute. *See Richardson v. Richardson,* 218 S.W.3d 426, 428 (Mo. banc 2007) (dissolution of marriage is statutory action; court is generally bound by statutory pronouncements of the legislature regarding dissolution law). Therefore, the parties are limited to the rights and remedies set forth in the statutes. *See Id.* Chapter 632 of the Revised Statutes of Missouri grants the court various powers other than determining whether a person is a sexually violent predator. These include providing for notice to be given to the court of the intent to transfer an involuntarily committed patient, section 632.370.1, RSMo Cum. Supp.2011, and determining the conditions that it deems necessary to meet the person's need for treatment and supervision upon conditional release, section 632.505.3, RSMo Cum.Supp.2011. Additionally, Chapter 632 grants persons alleged to be

---

5. To the credit of Fogle's counsel, counsel conceded at oral argument that there was no evidence in the record to support the court's finding that such an agreement existed.

6. Because we find that there was no agreement, we do not address the issue as to whether or not such an agreement, if made, would be valid and enforceable against the Department.

sexually violent predators various rights. These include the right to appeal any determination as to whether a person is a sexually violent predator, section 632.495.1, RSMo Cum.Supp.2011, to be represented by counsel at hearings, present evidence, cross-examine witnesses who testify against such person, and view and copy all petitions and reports in the court file, section 632.489.2, RSMo Cum.Supp.2011. However, this District and the Southern District of this court have rejected claims based upon powers or rights not explicitly contained in the sexually violent predator statutes. For example, in *State ex rel. Nixon v. Kinder*, 129 S.W.3d 5 (Mo.App. 2003), this Court held that the circuit court cannot order a competency exam of a person alleged to be a sexually violent predator because the right to be competent for trial at a sexually violent predator proceeding is not included in the statutes. Similarly, in *In re the Care and Treatment of Spencer*, 103 S.W.3d 407 (Mo.App.2003), the Southern District of this court held that the waiver of counsel by a person alleged to be a sexually violent predator does not have to be in writing because the SVP Act contains no such requirement.

The statute at issue in this case is section 632.495.2, RSMo Cum.Supp.2011, which reads:

> If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the director of the department of mental health for control, care and treatment until such time as the person's mental abnormality has so changed that the person is safe to be at large. Such care, control and treatment shall be provided by the department of mental health.

This statute states that once the court or jury determines that a person is a sexually violent predator, then that person should be turned over to the custody of the Director of the Department of Mental Health for care, control, and treatment. It does not explicitly state that the court can prescribe special conditions to the director of the Department of Mental Health regarding the person's care, control, and treatment. The court is granted the authority, however, under section 632.505.3, to prescribe special conditions upon conditional release.[7] "The express mention of one thing in a statute implies the exclusion of another." *Salcedo*, 34 S.W.3d at 868 (citing *State v. Cox*, 836 S.W.2d 43, 46 (Mo. App.1992)). Here, the legislature explicitly granted the circuit court authority to prescribe special conditions to a sexually violent predator upon their conditional release but did not explicitly do so during the commitment of a sexually violent predator. This implies that the legislature did not intend to grant the court the power to prescribe special conditions to a sexually violent predator during their commitment. *See, e.g., President Casino, Inc. v. Dir. of Revenue*, 219 S.W.3d 235, 241 (Mo. banc 2007) (stating that had "the legislature intended the resale or any other exemption of the sales tax law to apply to the gaming tax, it knew how to expressly craft such an exemption." The fact "[t]hat the legislature did not do so indicates its intent that sales tax exemptions not apply to the gaming tax."); *Hudson v. Dir. of Revenue*, 216 S.W.3d 216, 223–24 (Mo.App.2007) (holding that the "legislature demonstrated that it knew how to express its intent to require a knowledge element regarding motor vehicle insurance" by including such knowl-

---

**7.** Section 632.505.3, RSMo Cum.Supp.2011, reads in part: "The court shall review the plan and determine the conditions that it deems necessary to meet the person's need for treatment and supervision and to protect the safety of the public."

edge element in other motor vehicle insurance statutes).

Moreover, Fogle's argument that the court had the authority to impose special conditions upon his commitment because he has a statutory right to be placed "in the least restrictive environment," as set forth in section 632.365, RSMo 2000, is misguided. Under section 632.365, the Director of the Department, not the court, is charged with determining the "least restrictive" placement. Section 632.495.3 requires that all sexually violent predators committed for care, control, and treatment by the Department shall be kept in a secure facility designated by the Director. This is a further indication of the legislative intent that the Department controls the environment of sexually violent predators and calls into question the court's authority to designate a specific building and room number within the facility for Fogle's commitment.

Lastly, in its February 4, 2011, judgment following the evidentiary hearing, the circuit court "acknowledge[d] that it is, under normal circumstances, beyond the purview of a trial court to dictate how DMH provides for the care and treatment of an SVP. The circumstances of this case are not, however, normal in any respect." Regardless of the circumstances or facts of a particular case, it is the Department's—and not the court's—duty to dictate how committed persons under the SVP Act are to be cared for and treated.

Because the court lacked statutory authority to place special conditions upon the Department, and had the legislature wanted to give the court such authority it would have explicitly stated, the court erred in ordering the special conditions.

### III. Conclusion

We, therefore, conclude that the circuit court erred in concluding that there was an agreement for special conditions in exchange for a stipulation of facts between the State and Fogle because there was, in fact, no evidence on the record that there was any such agreement. The circuit court also erred in placing special conditions on the Department as part of the commitment of Fogle because the circuit court lacked statutory authority to do so. We reverse and remand the circuit court's judgment.

All concur.